Please call the next case. Case 1-9-1611, Mary Scott, Outback Steakhouse. Counsel, please. May it please the Court. Petitioner Mary was a waitress at an Outback Steakhouse. Her wages consisted of an hourly rate plus tips that she received from her customers. We believe the Commission computed the average weekly wage erroneously because what they considered were her hourly rate plus 8% of what her receipts were for the night from the customers. That's not consistent with Section 10, which requires that her actual wages be considered, not what is reported to the IRS. So regardless of weighing the evidence or anything of that nature, we believe that the evidence that the Commission considered was erroneous. And therefore, we believe that portion of the case should be remanded for a proper determination of her Section 10 wages. Child care. The legal issue as to whether or not child care is covered under Section 8A, of course, is strictly statutory. You have to look at Section 8A. Section 8A provides that all maintenance and expenses incidental thereto are covered if the petitioner is not able to be self-sufficient. Didn't they have surveillance videos showing her driving her kids to school, running errands, taking them to the doctor? Why can't she take care of her own kids? I said, didn't they have surveillance videos showing her driving her kids to and from school, she was running errands with her children, and she was taking them to doctor's appointments? Why can't she care for her own children? Why does she need child care? Well, the issue here was the child care we're talking about was much earlier in the case. When she was, where a doctor said she can't care for her kids, that was Dr. Vax very early on. That was continued throughout the case. As a matter of fact, the insurance carrier paid for years for the child care. So it's not an issue of whether or not she could care for the children. The issue is whether or not it's covered under Section 8A. Well, wait a minute. If she doesn't need the child care, then it's not covered under Section 8A. Yes, but the issue is whether it's reasonable and necessary under Section 8A, and the doctor said it was. Well, wait a minute. The doctor said it was, but she was caring for her own children. She was taking them to school. In addition to that, you've got two doctors saying that she's doing nothing but magnifying her symptoms. Yeah. But there's nothing in the decision that says that the child care was denied because of the issues you're raising. The decision said that 8A doesn't cover child care. So they're saying as a matter of law, it's not covered, regardless of what, you know, the factual basis is. Well, we can affirm on any basis in the opinion. Really, we're talking about two separate issues, are we not? First of all, we're talking about whether or not child care expenses falls within the purview of the statutory section you're citing, correct? Yes. And then it's a matter of if we did decide that it would be covered under the language, whether or not she would get it in this case anyway. Right. So what Justice Hoffman is saying is based on the facts and the evidence, even if we thought she would fall within the statutory provision, under the evidence it appears she would not have been covered because or she would not be entitled to it because she's caring for her children as demonstrated by the evidence. So what is your response to that? My response to that is what you should do is say that it's covered under Section 8A. You remand it to the commission to make this factual determination that you're raising because that's not in the decision. What did she prove as far as the cost of child care expenses? That's not even an issue. The respondent admits that the child care expenses that we're asking for are legit. That was never raised. In other words, whatever the amount is, $50,000, $60,000, that's not an issue. The issue is whether they are covered under Section 8A in the first analysis. And vans, houses, all kinds of maintenance issues that people need to get around when they're disabled are covered. And I don't see the distinction with child care. If she can't take care of her children because of the workers' comp disability or insufficiency or incapability, then that seems to be an expense incidental to her workers' comp. Is it reasonable? Is it necessary? Those issues, obviously. But the question of law, the commission said it's not covered. The commission's decision is very confusing regarding what medical expenses are covered. The accident was not a dispute. Cause of connection was found basically in her favor except for a few minor medical expenses. And they find that she's entitled to all of her medical expenses. But then in the order section, they award her $1,200. I don't understand how he got to that analysis. And that's another. I thought it said that was Dr. Adams' bill, wasn't it? There's nothing in the decision that talks about it allows Dr. Adams' bill for $1,200. That's correct. And I'm not contesting that. What I'm contesting is that there's, for example, $68,000 in prescriptions that aren't mentioned anywhere in the commission's decision. So it's very confusing as to when you say that all the medical expenses are allowed, and then in the order section you say we allow $1,200 for Dr. Adams. Regarding the TTD issue, she was off by her treating doctors from the date of the action up until trial. Dr. Freeman, the respondent's IME, his report did not go in the evidence because it was hearsay. And therefore, and he didn't testify in his deposition as to the issue of TTD. So really the TTD testified to by Dr. Adams was undisputed, and that should also be awarded. The nature and extent, she was awarded 20% man as a whole. However, there is no evidence in this case as to whether or not she ever arrived at MMI. And, again, I think the case should be remanded on that issue. Was this an issue, and these were issues brought up before the commission and brought up before the circuit court? Yes. If you read, and I know that you direct your attention to the commission's decision and not to the circuit court. That's right. But if you read the circuit court's opinion, all it does is it takes my brief and says petitioner claims this, and it takes the other side's brief and says the respondent claims this. It doesn't give any rationale, and I just, we're here because we don't get really a rationale at a lower level. To me, that's really inappropriate. It's a waste of time to go through the circuit court when there's no rationale. In this case needs some rationale. The findings do not, are not consistent with the conclusions and the orders. The only modification made in the commission decision was they awarded $11,000 credit for an overpayment of TTD. Other than that, it was really, it really confirmed the, or affirmed the decision of the arbitrator. Thank you very much. Counsel, please. Good morning. Patrick Grady on behalf of the respondent, Outback Steakhouse. Counsel, may it please the court. The issue of average weekly wage determination, I think we have to look at who has the burden to present the evidence. That, it rests squarely with the petitioner. In this case, the petitioner failed to present sufficient evidence for the commission to make a determination. The evidence presented was, I believe my hourly wage was between $3.50 and $4. I believe I worked between 15 and 25 hours a week, and I averaged $450 to $600 a week in tips. The act requires specificity and precision in the computation of the average weekly wage. In the absence of any specific evidence on the part of the petitioner, the commission appropriately chose to follow and utilize that evidence that was presented that was specific, namely the payroll records of the respondent that included an IRS-mandated 8% of petitioner sales as the computation for tips. So the claimant did not provide any independent documentation, tip sheet, anything like that, tip log? That is correct. There was no tip log. There were no documents that evidenced a disclosure of a higher rate of tips. And as was the case in the – all of a sudden now my brain has frozen. The case cited in our brief, the employee, the iron worker, had the same problem. He said, well, the wage statement's not correct, but he failed to present any evidence that establishes what was correct and the court ruled that the wage statement was appropriate. Now, your client's not a self-insured, right? To my knowledge, no, Your Honor. Okay. So we're dealing with third-party insurance and the premium for workers' comp is set based on payroll, right? That is correct. For indemnification? That is correct. Okay. Payroll and a history, a plain history. Right. But you've got to have a factor there for indemnification amount. What's at risk is payroll. Right. The more employees, presumably, the greater risk. Right. But it's still based on dollar-denominated payroll? Yes. Okay. Besides claims history. That is my understanding. Okay. So obviously the third-party carrier was using the payroll records of the employer, which have the IRS-mandated 8 percent of sales, probably. That is correct. Which would be used in the calculus to set premium. That was the documentation, the evidence that was used to calculate the average weekly wage in this case. Thank you. Therefore, I believe, given the Petitioner's failure to meet her burden, the Commission properly, under Section 10, computed the average weekly wage, which then affects a considerable number of other issues in this case. But I'd like to, if I may, and that pleases the Court, address the child care under 8A. It is our position that 8A does not mandate the payment of child care benefits. If one looks at the Workers' Comp Act in total, the Act is specific and limited to the benefit of the employee. If an employee is injured and requires someone to come in and help care for them, the employee, that, I believe, is covered under the Act. If an employee is injured but someone comes in, as in the case of this case before the Court, someone comes in to help care for children, that's not covered under the Act. The Act is very limited, is limited and specific to injured employees. And I believe, although I would grant the Court that maybe that section is subject to some interpretation, that when you look at the Act in total, that Act is specific and directed to the benefit of the employee only. When you make up the phrase, costs and expenses incidental thereto, is it arguably broad enough to cover those items, read literally? Read literally? Read in isolation? I think one could craft an argument, a reasonable argument to that point. But I believe when one is interpreting the Workers' Comp Act, we have to be, we have to look broader, we have to look to the intent of the Act as we divine from the Act as a whole. And the Act as a whole is focused specifically on the employee. So with that in mind, I would interpret the specific language the Justice inquires about as being limited to that which is necessary to assist the injured worker. Setting aside the issue of whether or not these expenses fall within the purview of the statute, what about the argument that even if we were so inclined to interpret the Act in that manner, under the facts of the case, she wouldn't be entitled to it because the evidence showed she was capable of taking care of her children? What can you opine about that issue? If the Court was inclined to suggest that this was, that child care is covered, I would make two specific points. Number one, the employer paid child care up to the point where she was deemed to have reached maximum medical improvement and could therefore go back to work and presumably no longer require assistance with child care. What date was that? That was April 24th of 2000. That's point one. Point two, and more directly to Your Honor's question, I believe there is factual evidence in the record that would support a determination that she would not be entitled to child care benefits because of her ability to care for her children. Therefore, she wouldn't be entitled to benefits. No. Do I understand you to say that the employer, really the third-party carrier, was paying child care benefits? That was a decision that the employer made. So they're interpreting the Act as broadly based. I seek forgiveness. I was not involved in that decision. I came on board. But I can't speculate as to why. Well, you don't have to speculate. The fact is they did, apparently. Some companies will pay their employees a more generous benefit than is required by Workers' Comp Act, Wage and Hour Act, as a matter of policy. I cannot tell the court that that, in fact, was not the case here. I cannot tell the court that, in fact, the employer and or the carrier, I would suspect the carrier not because they do this, but that the employer interpreted the Act to require it. I can't give the court a factual-based opinion either way. Who is Dr. Vance, Kenneth Vance? Was he the employer's doctor? That was a doctor, sorry, that was a doctor that Petitioner was sent to initially early on. By who? I believe that was by the, it would have been the insurer. By the insurance company. Right. And that doctor required her to receive full-time daycare. Is that correct? Well, that was an opinion he rendered. I don't know if the doctor can require it. I think the doctor can render a medical opinion suggesting that she would need it. Then I believe the insurance company and or the employer, therefore, makes, once the doctor tells what he thinks from a medical standpoint is necessary, then I believe the employer and the insurance company will make that determination as to what they will provide. You're familiar with the Beelman case where the Supreme Court decided and allowed for the insurance on the van and the computer and that type of work for the paraplegic. How is the reasoning in the Supreme Court different, or why would it be applicable to child care in this case? Because I believe the Act, as I discussed earlier, I believe the Act is very specific and very limited to a class of individuals being an injured worker. I think we get on to a very slippery slope if we extend the Act beyond that. Are we now, if we start down that path, does the employer or its insurer now have to pay to provide transportation for an injured worker's kids to take them to the baseball practice? We can get down a very slippery slope. I think we need to focus on what the Act is intending to do. I'm going back to my question. Why do we even have to go down that slope? This arbitrator found that the surveillance videotapes taken from December 10th to 11th of 1999, December 27th to 31st of 99, April 8th to 10th of 2001, and December 20th to 21st of 2001, depict a petitioner driving, shopping, and running errands with and without her children. It's clear that the petitioner is magnifying her symptoms and is not credible. The evidence belies the petitioner's claim that she is unable to work. If she can work, she can take care of her children. Why do we even have to decide the question of whether child care falls under 8A? If we don't have to construe a statute, why do we? Maybe my invitation to the court to, in fact, construe the statute was a bit... Invitation by you? I wouldn't think you would want to be in sending out invitations. I think clarity, Your Honor, in interpretation of the statute benefits both the petitioner and the respondent. I agree with your analysis, Justice. I just believe that the lack of case law or decisions on this particular point suggests that maybe we should, or at least I'm inviting the court, whether the court accepts my invitation. If the claim relies on the evidence, wouldn't that be something akin to like an advisory opinion? Why would we construe a statute when we don't have to? Are you asking for a credit for the amount you paid in child support? No, we are not. And that's why, to go back to a prior question, I'm uncomfortable suggesting that it was a misinterpretation. It may well have been a corporate decision to pay it. In which case, I would be uncomfortable asking for a credit personally as the advocating attorney. So I believe the statute doesn't require child support. And, Justice, I agree with you that the record is replete with evidence as to why she would not be entitled to it otherwise. I think the commission, to respond to another point of counsel, is the commission was very clear on its decision. She was entitled to medical benefits up to the point on April 24th of 2000, when Dr. Freeman expressed the opinion that she was capable of working. She had recovered. She had no residual effects. And she no longer needed additional medical care. Thank you, counsel. Thank you. Well, thank you. We respectfully request that the court affirm. Thank you very much. Justice Hoffman read a quote from the arbitrator's decision. Did you hear it? Will you repeat that, Judge? Well, it was quoted from the arbitrator's decision. And a part of that quote was the claimant was found not credible. Where does that put her? The trouble is, is that that was the videos that you're talking about, and that's you're talking about the videos. That was in 99. The accident happened in 96. The videos weren't done until three years after the accident. So there's a three-year period of time from the date of the accident up until these videos. There's no evidence regarding her credibility prior to the videos. In other words, there's no evidence about what happened that first three years. No evidence of what she paid either, did it? For child care? Oh, yeah. That's not an issue. They're not disputing the amount that she paid for child care. And, by the way, in response to the issue of who paid for it, it was paid by Kemper Insurance from the very beginning. She was sent to Dr. Vatz by the carrier. He's the one who suggested the child care. Counsel, who bears the burden of proving the necessity of child care? Certainly the petitioner does. Certainly the petitioner does. I don't think the fact that they pay it is any admission on their part. However. You would agree it's not an admission? It's not what? It's not an admission, correct? It's not an admission. No, it never could be because then you would not have employers who were willing to come forward and pay claims up front if that was an admission. But, I think in this case, it is an expense incidental thereto, much like a lot of the disability converted homes, vans and all types, swimming pools, physical therapy, whirlpools and things that doctors order in workers' camp cases. So I think regarding the issue of her credibility, I think you have to look at the time period. There was no credibility issue that could be raised prior to the time of the video, and that was in 1999, three years after the accident. She should at least be entitled to the child care up to that point. And regarding the average weekly wage, I don't think the IRS can dictate Illinois law regarding what we consider as Section 10 wages. It has to be what's in Section 10, not what's in the IRS rules. Thank you, Judge. Clerk will take the matter under driver for disposition.